UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>WELLS ALLAN WYATT,<br><br>    Debtor, | **Case No. 1:19-cv-00372-DCN**<br><br>Adv. Case No. 18-08006-JMM<br>Bankr. Case No. 17-40973-JMM |
| WELLS ALLAN WYATT<br><br>    Appellant,<br><br>    v.<br><br>BANNER BANK,<br><br>    Appellee. | **MEMORANDUM DECISION AND ORDER ON APPEAL** |

## I. INTRODUCTION

This matter comes before the Court on Debtor-Appellant Wells Alan Wyatt's appeal from the United States Bankruptcy Court for the District of Idaho. The appeal is fully briefed and ripe for the Court's review. Having fully reviewed the record herein, the Court finds the parties have adequately presented the facts and legal arguments in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court decides this appeal without oral argument. For the reasons set forth below, the Court hereby AFFIRMS the bankruptcy court's order.

## II. BACKGROUND

On November 3, 2017, Wyatt filed for chapter 7 bankruptcy in the District of Idaho. Case No. 17-40973-JMM. Judge Joseph Meier was assigned the case. Wyatt's primary creditor, Banner Bank, initiated a non-dischargeability action against Wyatt on February 14, 2018, pleading six causes of action. 18-8006-JMM, Dkt. 1.

Wyatt began to buy and sell cattle in 2002. *Id.* at 4. Shortly after, Wyatt partnered with the Timmermans—a family of cattle traders and feedlot operators—via oral agreement to purchase and sell cattle, though the terms of this agreement are unclear. *Id.* In 2007, Wyatt started an Oregon corporation, Wyatt Livestock ("Livestock"), in which Wyatt acted as the sole shareholder, director, and officer. *Id.* Livestock's main business was buying and selling cattle for third parties, such as the Timmermans. *Id.* In 2008, Wyatt began investing some of his own funds into the cattle purchased by the Timmermans as part of their partnership ("Partnership"). *Id.* at 5.

Under the new nature of the Partnership, it is unclear to what extent the Timmermans financed the purchase of cattle. *Id.* at 6. For example, the records and testimony at trial indicate that sometimes the Timmermans would fully fund the purchase of the cattle, and thus Wyatt would have no ownership interest. *Id.* However, even in those instances, Wyatt often retained a variable interest in the profits or losses resulting from the sale or slaughter of the cattle. 18-8006-JMM, Dkt. 111, at 6; *see also* Dkt. 15-1, Appendix 17, Trial Trans., V. 1, 35:8-36:2; 46:12-47:4; 59:24-60:5. However, sometimes Livestock would finance part of the cattle. *Id.* In those situations, Livestock would retain an ownership interest in proportion to his contribution. *Id.*

MEMORANDUM DECISION AND ORDER – 2

After a particular lot[1] of cattle was sold or slaughtered, the Timmermans would send Wyatt a Settlement Sheet, which recorded revenue, expenses, costs of the cattle, interest due on financed cattle, profits and losses, and the extent of Livestock's contribution towards the cattle at the time the lot was purchased. Dkt. 15-1, Appendix 17, Trial Trans., V. 1, 37:2-20. The Settlement Sheets would also reflect whether, and how much, the Timmermans owed Livestock, or vice versa. *Id.* Thus, these Settlement Sheets were important to understand the nature of Livestock's interest in the cattle lots.

Wyatt began borrowing from Banner Bank in 2006 to help fund his contributions to the Partnership. 18-8006-JMM, Dkt. 111 at 11. Over time and by August 2016, this line of credit increased to $2,000,000. *Id.* The loan was collateralized by Livestock assets and assets from Wyatt's other business entity, Wyatt Feeding. *Id.* This loan required Wyatt to report his monthly value of livestock assets on a borrowing base certification. *Id.*

From 2009 to 2016, Wyatt's girlfriend—Candice Cooley—was in charge of the books and records for Livestock. *Id.* at 5. Cooley was able to testify at length during trial about the kind of record-keeping she performed for Livestock. Dkt. 15-17. From 2011 to 2016, Cooley prepared monthly borrowing base certificates (BBC) to send to Banner Bank, which described the state of Livestock's interest in the cattle. *Id.* After Cooley left Livestock in 2016, Wyatt claims that David Stirewalt—the principal loan officer at Banner Bank—told Wyatt to send him the cattle lot date, and Stirewalt would use it to complete the BBCs. 18-8006-JMM, Dkt. 111, at 13. Wyatt reports not having seen a completed BBC

---

[1] The bankruptcy court defines "a lot of cattle" as an identifiable group of cattle, rather than a particular quantity. 18-8006-JMM, Dkt. 111 at 6, n.3.

MEMORANDUM DECISION AND ORDER – 3

from January 2017 on. *Id.* Each BBC included the following data: "(1) the number of head of cattle; (2) the type of cattle; (3) location; (4) feedlot owner; (5) lot number; (6) weight; (7) price; (8) total value; (9) percentage ownership; (10) accounts payable; (11) net value purportedly held by Wyatt; (12) owner/partner names; and (13) comments." *Id.* at 12.

However, the BBCs failed to adequately reflect the ownership and profit-sharing arrangements between Wyatt and the Timmermans. *Id.* at 13. Additionally, the BBCs failed to consistently distinguish between "breeding stock" which were long term assets, and "non-breeding stock," which were short-term assets that varied from month-to-month. *Id.* The lack of consistent information made it difficult to discern the true nature of Wyatt's finances.

Due to this lack of details in the record-keeping, Wyatt's primary creditor, Banner Bank, initiated a non-dischargeability action against Wyatt on February 14, 2018, pleading six causes of action. 18-8006-JMM, Dkt. 1. The bankruptcy court ruled in favor of Banner Bank, finding that Wyatt had failed to keep adequate records under 727(a)(3), and thus was denied a discharge. *Id.* at Dkt. 111.

### III. ISSUE AND STANDARD OF REVIEW

The sole issue on appeal is whether the bankruptcy court erred in denying Wyatt's discharge under 727(a)(3). District courts review bankruptcy court decisions in the same manner as would the Ninth Circuit. *See George v. City of Morro Bay (In re George)*, 177 F.3d 885, 887 (9th Cir. 1999). Thus, the Court reviews the bankruptcy court's conclusions of law de novo and its factual findings for clear error. *Id.*

## IV. ANALYSIS

Wyatt claims that there are several grounds for reversal of the bankruptcy court's ruling in this case. He first contends that the bankruptcy court committed clear error in its assessment of the evidence. Wyatt then contends that the bankruptcy court misapplied a set of legal factors. The Court will address these issues, and the sub-issues they raise, in turn.

**A. Clear Error**

First, Wyatt contends that the bankruptcy court placed an undue weight on the lack of Settlement Sheets. Whether a debtor failed to maintain and preserve adequate records is a finding of fact, which the Court will review for clear error. *Cox v. Lansdowne (In re Cox)*, 904 F.2d 1399, 1401–02 (9th Cir. 1990).

Courts should narrowly construe exceptions to dischargeability of debts "in order to serve the Bankruptcy Act's purpose of giving debtors a fresh start." *Lansdowne v. Cox (In re Cox)*, 41 F.3d 1294, 1297 (9th Cir.1994) (quoting *Matter of Kasler*, 611 F.2d 308, 310 (9th Cir.1979)). "The court shall grant the debtor a discharge, unless . . . the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3). Section 727(a)(3) of the Bankruptcy Code does not require that a debtor preserve and provide all financial records. *Caneva v. Sun Cmtys Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755, 761 (9th Cir.2008). However, the debtor must provide written documentation

which would allow creditors to "ascertain his present financial condition and to follow his business transactions for a reasonable period in the past." *Rhoades v. Wikle*, 453 F.2d 51, 53 (9th Cir.1971). An objector establishes a § 727(a)(3) prima facie case by showing that: (1) the debtor failed to maintain and preserve adequate records; and (2) this failure rendered it impossible to ascertain the debtor's financial condition and material business transactions. *In re Caneva*, 550 F.3d at 761.

The finding that a debtor failed to preserve adequate records does not necessarily mean that the debtor failed to keep *any* records. *In re Hussain*, 508 B.R. 417, 424 (B.A.P. 9th Cir. 2014). In *In re Hussain*, the debtor provided the court and creditors with his personal income tax returns, which recorded income earned, expenses incurred, and losses suffered. *Id.* However, these reports did not include the "revenue long, general account statements, or credit card statements relating to payment of the gasoline jobber invoices." *Id.* at 425. Without those records, the court found that creditors could not adequately understand the nature of quality of the debtor's financial status or identify possibly fraudulent transfers. *Id.*

Additionally, the sufficiency of records under § 727(a)(3) is not dependent upon the quantity of records, but rather the contents of those records. *In re Caneva*, 550 F.3d at 761. The court must focus on whether those records allow a creditor to determine the nature of the debtor's finances and business dealings. *Id.* at 762. In *In re Caneva*, the debtor failed to provide any records about numerous business entities that he controlled. *Id.* The debtor argued that while there was a complete absence of records relating to his business entities, he should not be denied discharge because he did provide boxes of financial documents

and reports. *Id.* at 760.

Here, the bankruptcy court did not commit clear error when finding that Wyatt failed to keep adequate records which made it impossible to determine the nature of Wyatt's finances. Wyatt contends that the bankruptcy court placed an undue weight of importance on the missing settlement sheets. Wyatt claims that the bankruptcy court should have instead focused on the mass of records he did provide. However, when determining the adequacy of records, the focus is not on the quantity of records, but rather the sufficiency of those records. *See Fox v. Miller*, 589 B.R. 659, 665 (C.D. Cal. 2018). Wyatt produced thousands of pages of reports and documents, consisting mostly of "feed bills, BBCs, loan histories, incoming and outgoing cattle reports, and emails between Livestock, Defendant, Cooley, the Timmermans, Plaintiff, and third parties." 18-8006-JMM, Dkt. 111, at 33-34. Noticeably, however, Wyatt included only a few Settlement Sheets, and none from the two years leading up to the filing of bankruptcy. During trial, Wyatt testified that the Settlement Sheets included important information such as expenses and revenues related to each lot of cattle, the relative shares of ownership of cattle between Wyatt and the Timmermans, profits and losses, and the amount due by either Wyatt or the Timmermans.

The bankruptcy court found that it was unable to determine Wyatt's interest in the breeding stock at the time of bankruptcy. Wyatt did provide BBCs from 2011 to 2016 which indicated that he owned 50% of the breeding stock lots, but Wyatt also testified that he had been growing his percentage interest in the breeding stock over time. 18-8006-JMM, Dkt. 111, at 22. Wyatt also failed to provide documents which showed his interest in the non-breeding stock listed on the August 2017 BBC. Without this information, neither the

bankruptcy court, nor Banner Bank, could deduce Wyatt's financial interests at the time of bankruptcy. This decision was not based solely on the absence of Settlement Sheets—rather, the bankruptcy court pointed out that Wyatt could have produced alternative documents, such as a summary ledger or accounting that demonstrated his financial interest in his dealings with the Timmermans. *Id.* at 36.[2] Because this important information was missing, the bankruptcy court found that Wyatt had failed to keep or preserve adequate records. The Court cannot find clear error in this decision, as the bankruptcy court considered all relevant records and was unable to determine Wyatt's true interest in his dealings with the Timmermans.

Once an objector satisfies these elements, the burden shifts to the debtor to establish that the failure to keep adequate records was justified. *In re Caneva*, 550 F.3d at 761. A debtor's failure to keep or preserve books or records will depend upon whether others in like circumstances would ordinarily keep such records. *In re Cox*, 41 F.3d at 1297. Courts will consider potentially relevant factors, including the debtor's "education, experience, and sophistication." *In re Schreiter*, 2007 WL 1772176, at *3 (Bankr. D. Ariz. July 19, 2007). Generally, a more sophisticated businessman, with years of experience and education, will be held to a higher standard than an individual who has a more basic operation. *Id.*

---

[2] As the bankruptcy court put it, "The extent of Livestock's interest could easily have been documented in a minimum of two ways. First, Defendant could have maintained and preserved the Settlement Sheets that show how and when his profits and losses from non-breeding stock cattle were credited or debited towards his equity in the Parentship breeding stock. Alternatively, the Plaintiff could have supplied a summary ledger or accounting showing the transactions relevant to the development of his interest in the Partnership breeding stock." 17-40973-JMM, Dkt. 11 at 38.

MEMORANDUM DECISION AND ORDER – 8

Wyatt asserted, and the bankruptcy court addressed, three reasons justifying the absence of records. First, the court considered the impact on a state court proceeding between Wyatt and the Timmermans. However, Wyatt did not provide any evidence to explain why the ongoing state litigation may have prevented him from keeping or providing adequate records.

Next, Wyatt contended that he kept records as others in like circumstances would ordinarily keep them. Dkt. 16, at 4. However, Wyatt provided no evidence to support that statement, so the bankruptcy court presumed that cattle ranchers in like operations would have kept "at least enough records to determine the dispositions of the major assets crucial to the operation of their business." 18-8006-JMM, Dkt. 111 at 8. Moreover, merely establishing that many people do not follow section 727 is not a sufficient justification for courts to forgo following the legislature's will. Because Wyatt has the burden to establish that his failure to adequately keep records was justified, he must provide evidence beyond conclusory statements, which he has not done. *See In re Caneva*, 550 F.3d at 763.

Finally, Wyatt claimed that when Cooley left Livestock, she took a laptop containing business records. However, Wyatt did not expand as to what records may have been contained on that laptop, or why the absence of that laptop justified the lack of records. In his appeal, Wyatt argues that his situation is not dissimilar to the one presented in *Cox*, where the debtor relied on a well-educated and experienced business partner with whom she had an intimate relationship. 904 F.3d at 1403. In *Cox*, the bankruptcy court found that delegation of responsibilities is commonplace in businesses owned or controlled by multiple people, and that "such delegation is even more likely in cases where the partners

are married, and one spouse has significantly more business experience, knowledge, and expertise than the other." *Id.* Wyatt claims that this is also the case here, where Wyatt had a close relationship with Cooley, and Cooley had "much more business experience, knowledge, and expertise" than Wyatt. Dkt. 16. However, when Wyatt met Cooley, he had already been operating Wyatt Livestock for years, and had already entered into his partnership with the Timmermans. Additionally, while Cooley testified that she controlled the books for Wyatt Livestock from about 2010 to August of 2016, she also testified that Wyatt would aid her in the preparation of documents by providing her the necessary information. Dkt. 15-1, Appendix 17, Trial Trans. V.1 42:15-20. This was not a situation where Wyatt was wholly depending upon Cooley to handle all of the documentation and records, with no participation on his part. Additionally, it is difficult to say that Cooley had such significantly more experience than Wyatt that is was justifiable for him to wholly rely upon her, when she did not join Livestock until after Wyatt had already entered into complex business agreements, such as his loan agreement with Banner Bank and the partnership with the Timmermans. As such, it was not clear error for the bankruptcy court to hold that Wyatt was not justified in his failure to keep records.

A debtor has the affirmative duty to keep adequate records and books. *In re Caneva*, 550 at 762. When they fail to perform that duty, the debtor must justify their failure or risk losing a discharge. *Cox*, 41 F.3d at 1296. Here, Wyatt failed to provide his creditors, as well as the Court, any documents which would demonstrate the nature of his interest in various lots of cattle. In the absence of overwhelming evidence to the contrary, the Court cannot conclude that it was clear error to hold that Wyatt had failed to preserve adequate

records.

**B. Legal Application**

Next, Wyatt contends that the bankruptcy court incorrectly applied Ninth Circuit precedent by failing to consider a number of factors when determining if Wyatt was justified in his failure to preserve records. Dkt. 9, at 25. The Court reviews conclusions of law de novo. *In re George*, 177 F.3d at 887.

The Ninth Circuit has held that "the bankruptcy court should consider *all circumstances* of the case" to determine whether the debtor's failure to keep adequate records was justified. *See Cox*, 904 F.2d at 1403; *see also* 11 U.S.C. § 727(a)(3). The court further listed relevant factors that the lower court should consider on remand in *Cox*. *Cox*, 904 F.2d at 1404 n.5. The United States Bankruptcy Court in the District of Idaho referenced theses factors in *Hart*:

> In an earlier Cox decision, the Ninth Circuit identified several *potentially* relevant factors in considering claims under § 727(a)(3). They include: the debtor's intelligence and educational background; his experience in business matters; the extent of his involvement in the business for which discharge is sought; his reliance on another party to keep records including what, if anything, he saw or was told that indicated the other party was keeping records; and any record keeping or inquiry duties imposed on the debtor by state law.

*U.S. v. Hart (In re Hart)*, 563 B.R. 15, 36-37 (Bankr. D. Idaho 2016) (emphasis added).

Wyatt mischaracterizes the court's use of these specifically enumerated factors as necessary and required, rather than factors that could be potentially relevant based upon the facts and circumstances of the individual debtor. *Id.*; *see* Dkt. 11 at 25. The determination of whether a debtor is justified in their failure to keep records is fact intensive

and considered on a case-by-case basis depending upon all relevant facts and circumstances. *See In re Cox*, 41 F.3d at 1299; *In re Caneva*, 550 F.3d at 763. Additionally, these factors are not exclusive—a court should consider any factor which may have justified the debtor's failure to keep records. *See Adams v. McKay (In re McKay)*, 504 B.R. 649, 655 (Bankr. D. Idaho 2014); *In re Cox*, 904 F.2d at 1403 (remanding case for bankruptcy court to" consider *all* circumstances of the case to determine if [debtor's] failure to keep records was justified.").

Here, the bankruptcy court notes this idea in quoting *McKay*: "[j]justification for a bankrupt's failure to keep or preserve books or records will depend upon…whether others in like circumstances would ordinarily keep them." (citing *In re McKay*, 504 B.R.at 655.). The court then considered multiple factors, including Wyatt's ongoing litigation with the Timmerman's in state court, the need to keep records in cattle ranching, whether other ranchers in similar circumstances would keep these records, and the impact of Cooley's departure on Wyatt's record keeping. Wyatt criticized the bankruptcy court for failing to consider these factors in determining if his failure to keep records was justified. However, though the court did not explicitly state these factors, they are present in their reasoning. For example, by considering the loss of records on the laptop which Cooley took, the court considered Wyatt's reliance on another party for record keeping. *See* 18-8006-JMM, Dkt. 111, at 38. Additionally, the bankruptcy court was under no requirement to consider the factors specifically enumerated in *Cox* and *Hart*. Rather, the court was required to perform a fact-intensive inquiry, considering whether Wyatt's individualized circumstances justified the absence of records. Here, the court did that. As such, the court did not err in

failing to apply the specific factors enumerated in *Cox* and *Hart*.

## C. Conclusion

Because the bankruptcy court applied the correct legal standard and did not commit clear error when denying Wyatt's discharge under 11 U.S.C. §727(a)(3), the Court affirms the bankruptcy court's ruling.

## V. ORDER

It is hereby ordered that

1. The bankruptcy court's decision to deny Wyatt's discharge under 11 U.S.C. § 727(a)(3) is AFFIRMED.
2. Wyatt's Motion to Augment the Record (Dkt. 14) is GRANTED.
3. Wyatt's Motion to Dismiss Appellee's Appeal (Dkt. 17) is DENIED as moot since the claims in the cross-appeal have been abandoned (Dkt. 18).

DATED: December 7, 2020

_____
David C. Nye
Chief U.S. District Court Judge